**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LESIA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No._____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CITY OF ATLANTA, GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Lesia Johnson files this Complaint for Equitable Relief and Damages against the City of Atlanta, Georgia (the "City"), showing the Court as follows:

## INTRODUCTION

1.      This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADA"), 42 U.S.C. § 1210 *et seq*., to correct unlawful employment practices on the basis of disability, to vindicate Ms. Johnson's rights, and to make her whole.

2.      Ms. Johnson seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory damages, and attorney's fees and costs of litigation.

## JURISDICTION, VENUE, AND PARTIES

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4.      Venue is proper under 28 U.S.C. § 1391(b) because the City of Atlanta conducts business the Northern District of Georgia, and the unlawful actions and practices alleged herein occurred in this judicial district.

5.      Ms. Johnson is a citizen of the United States, and she submits herself to the jurisdiction of this Court.

6.      The City of Atlanta is a municipal corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia.

7.      Ms. Johnson is, and at all times relevant to this suit was, an individual with a disability as defined by the ADA. 42 U.S.C. § 12102(1).

8.      Ms. Johnson is a person with a disability because she has physical and mental impairments that substantially limit one or more of her major life activities, because she has a record of impairment, and/or because the City regarded her as having an impairment.  42 U.S.C. § 12102(1).

9.      Ms. Johnson was capable of performing the essential functions of her job with the City with or without an accommodation.

10.     The City is an "employer" within the meaning of the ADA because it engages in commerce or in an industry affecting commerce and employs more than

2

15 employees for each working day in each of 20 calendar weeks in the current or preceding year. 42 U.S.C. § 12111(5).

11.     The City of Atlanta may be served with process by serving the Mayor at the Office of the Mayor, Executive Offices, 55 Trinity Avenue, Atlanta, Georgia 30303.

## ADMINISTRATIVE PROCEEDINGS

12.     The City terminated Ms. Johnson's employment on January 11, 2022.

13.     Less than one month after her termination, on or around February 5, 2022, Ms. Johnson submitted an initial inquiry with the EEOC and received an EEOC inquiry number: 410-2022-02791.

14.     The same day Ms. Johnson submitted her inquiry with the EEOC, Ms. Johnson tried to schedule an interview with an EEOC representative to discuss her claim, but there were no available interview slots on the EEOC's website until around August 2022.

15.     The following day, on or around February 6, 2022, Ms. Johnson called the EEOC to request an interview appointment.

16.     The EEOC representative Ms. Johnson spoke with informed her that she simply had to continue checking the EEOC website for an opening.

17.     Ms. Johnson did so, and she booked the earliest available appointment listed on the EEOC's website—July 19, 2022.

18.     Still, Ms. Johnson was eager to communicate with an EEOC representative as soon as possible, so she checked the EEOC website every day for an earlier appointment slot.

19.     On February 16, 2022, Ms. Johnson saw an open an interview appointment on June 21, 2022, so she booked that slot and canceled her July 19th appointment.

20.     On June 21, 2022, Ms. Johnson had her interview with EEOC Investigator Cynthia Wilson.

21.     On June 22, 2022, Ms. Wilson sent Ms. Johnson a Charge of Discrimination and informed her that she had 30 days to sign the Charge (i.e., until July 22, 2022).

22.     Ms. Johnson's Charge Number is 410-2022-02791, the same as her inquiry number.

23.     Notably, around this time, Ms. Johnson contracted a severe case of COVID-19—she was sick with intense COVID-19 symptoms from late June until early July 2022.

4

24.    Ms. Johnson signed the Charge of Discrimination on July 14, 2022, less than one month after she received it and after she had started to recover from COVID-19.

25.    Ms. Johnson received a Notice of Right to Sue from the EEOC on July 20, 2022.

26.    During her interactions with the EEOC, Ms. Johnson was unrepresented by counsel.

27.    Ms. Johnson brings this suit within ninety (90) days of the receipt of her Notice of Right to Sue.

## FACTUAL ALLEGATIONS

28.    Ms. Johnson began her employment with the City of Atlanta on or around August 22, 2001 as a Management Analyst with the Department of City Planning's Bureau of Housing and Economic Development.

29.    Ms. Johnson performed her job well and was ultimately promoted to Director II in the Department of Watershed Management's ("DWM") Office of Financial Administration.

30.    Before joining the City, Ms. Johnson served in the United States Army from around July 1979 to July 1983.

31.    Due to her service with the United States Army, Ms. Johnson developed an anxiety disorder and depression.

32.    Ms. Johnson's anxiety and depression are disabilities under the ADA as both substantially limit one or more of her major life activities.

33.    Ms. Johnson's anxiety and depression cause her to grind her teeth and causes body pains, tingling in her fingers, and back pain.

34.    Additionally, in or around February through March of 2020, Ms. Johnson went on approved FMLA-leave from the City for her anxiety disorder and was in a six-week long out-patient counseling program during that time.

35.    From around December 2018 to July 2021, Ms. Johnson's supervisor was Mohamed Balla.

36.    Beginning around July 2021, through the date of Ms. Johnson's termination, Jonathan Williams, Deputy Commissioner of the Office of Financial Administration, was Ms. Johnson's supervisor.

37.    Ms. Johnson informed the City's Human Resources Department and Mr. Balla about her disabilities, thus the City was aware of Ms. Johnson's disabilities.

38.    In or around March 2020, due to the COVID-19 pandemic, all DWM employees were required to work remotely.

6

39.     Around August 2021, employees gradually returned to working in the office.

40.     When Ms. Johnson was working with City, most employees were working in the office about two days per week and many were continuing to telework full-time.

41.     On or around September 20, 2021, Ms. Johnson provided the City's Human Resources Department with a note from her doctor stating that she needed to work from home from September 20, 2021 through October 20, 2021 as an accommodation for her disabilities.

42.     During this time, Ms. Johnson performed her job well – she worked more than her fulltime hours and was available to assist Mr. Williams whenever he called on her.

43.     On or around October 28, 2021, Ms. Johnson provided the City's Human Resources Department with another note from her doctor stating that she needed to work from home from October 20, 2021 through February 20, 2022 as an accommodation for her disabilities.

44.     Out of nowhere, Mr. Williams terminated Ms. Johnson's employment on January 11, 2022, about one month before her return-to-work date.

45.     Mr. Williams told Ms. Johnson that she was being terminated because the City's accounts receivables were increasing and the City was going in a different direction.

46.     Mr. Williams told Mr. Balla and Nissan Lewis, Mr. Williams' former Executive Assistant, that he terminated Ms. Johnson's employment because he needed someone who was going to be working in the office and that he never saw Ms. Johnson in the office.

47.     Mr. Williams' reasoning for Ms. Johnson's termination indicates that the City terminated Ms. Johnson because of her disability and accompanying accommodation—i.e., remote work until February 20, 2022.

48.     The City's termination of Ms. Johnson for exercising her right to an accommodation for her disability constitutes unlawful discrimination and retaliation under the ADA.

49.     As a result of the City's unlawful termination of Ms. Johnson's employment, she has suffered damages, including but not limited to lost wages and benefits, out of pocket expenses, and emotional distress.

## COUNT I
## Actual Discrimination and Failure to Accommodate
## in Violation of the ADA

50.     Ms. Johnson incorporates by reference all the preceding paragraphs of the Complaint.

51.     At all times relevant to this action, Defendant City of Atlanta was subject to the requirements of the ADA.

52.     At all times relevant to this action, Ms. Johnson was an individual with a disability as defined by the ADA, specifically 42 U.S.C. § 12102(1).

53.     Ms. Johnson was a qualified individual with a disability as defined by the ADA, 42 U.S.C. § 12111(8), and was able to perform the essential functions of her job.

54.     Ms. Johnson's disabilities substantially limited one or more major life activities.

55.     Defendant City of Atlanta was aware of Ms. Johnson's disabilities.

56.     Ms. Johnson requested a reasonable accommodation from the City— telework until February 20, 2022—relating to her disabilities.

57.     The City terminated Ms. Johnson's employment while she was exercising her right to a reasonable accommodation.

58.     Mr. Williams, Ms. Johnson's supervisor, repeatedly admitted that he terminated Ms. Johnson's employment because she was working remotely.

59.     The City terminated Ms. Johnson because of her disability and her accompanying accommodation.

60.     The City's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

61.     As a direct and proximate result of the City's intentional discrimination, Ms. Johnson has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including retirement benefits, all in an amount to be established at trial.

62.     The City's actions have also caused, continue to cause, and will cause Ms. Johnson to suffer damages for emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

63.     Accordingly, Ms. Johnson is entitled to equitable and monetary relief for Defendant's violation of her rights under the ADA.

## COUNT II
## Retaliation in Violation of the ADA

64.     Ms. Johnson incorporates by reference all the preceding paragraphs of the Complaint.

65.     At all times relevant to this action, Defendant City of Atlanta was subject to the requirements of the ADA.

66.     At all times relevant to this action, Ms. Johnson was an individual with a disability as defined by the ADA, specifically 42 U.S.C. § 12102(1).

67.     Ms. Johnson was a qualified individual with a disability as defined by the ADA, 42 U.S.C. § 12111(8), and was able to perform the essential functions of her job.

68.     Ms. Johnson's disabilities substantially limited one or more major life activities.

69.     Defendant City of Atlanta was aware of Ms. Johnson's disabilities.

70.     Ms. Johnson requested a reasonable accommodation from the City— telework until February 20, 2022—relating to her disabilities.

71.     The City terminated Ms. Johnson's employment while she was exercising her right to a reasonable accommodation.

72.     Mr. Williams, Ms. Johnson's supervisor, repeatedly admitted that he terminated Ms. Johnson's employment because she was working remotely.

73.     The City terminated Ms. Johnson in retaliation for Ms. Johnson exercising her right to a reasonable accommodation for her disabilities.

74.    The City's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits interring with an individual's exercise of her rights under the ADA.

75.    The City's actions in retaliating against Ms. Johnson following her request for a reasonable accommodation were committed reckless disregard for Ms. Johnson's right to be free from discriminatory treatment.

76.    As a direct and proximate result of the City's intentional retaliation, Ms. Johnson has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including retirement benefits, all in an amount to be established at trial.

77.    The City's actions have also caused, continue to cause, and will cause Ms. Johnson to suffer damages for emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

78.    Accordingly, Ms. Johnson is entitled to equitable and monetary relief for Defendant's violation of her rights under the ADA.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff Lesia Johnson demands a **TRIAL BY JURY** and respectfully requests the following relief:

a.      A declaratory judgment that the City's acts, policies, practices, and procedures complained of herein violated Ms. Johnson's rights as secured under the ADA;

b.      A permanent injunction enjoining the City, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging further violations of the ADA;

c.      A judgment in favor of Ms. Johnson and against the City under all counts of this Complaint;

d.      Full back pay from the date of Ms. Johnson's termination, including all raises to which she would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

e.      Reinstatement of Ms. Johnson to her former position with the City or in the alternative, front pay to compensate her for her lost future wages, benefits, and pension;

f.      Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Ms. Johnson's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

g.      A jury trial on all issues so triable;

h.      Reasonable attorney's fees and costs; and

i.      Other and further monetary and equitable relief as the Court deems just

and proper.

Respectfully submitted this 30th of August 2022.

/s/ Cheryl B. Legare
Cheryl B. Legare
Georgia Bar No. 038553
Marcela X. Johnson
Georgia Bar No. 328871

**LEGARE, ATTWOOD & WOLFE, LLC**
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
Tel: (470) 823-4000
Fax: (470) 201-1212
cblegare@law-llc.com
mxjohnson@law-llc.com

*Counsel for Plaintiff*

14